UNITED STATES, Appellee,

v.

Richard GUYON, Defendant, Appellant.

No. 92–2452.

United States Court of Appeals,
First Circuit.

Submitted March 10, 1994.

Decided June 27, 1994.

Stephen J. Weymouth, Boston, MA, on brief for appellant.

Kevin J. Cloherty, Asst. U.S. Atty., and Donald K. Stern, U.S. Atty., Boston, MA, on brief, for appellee.

Before BREYER,* Chief Judge, TORRUELLA and BOUDIN, Circuit Judges.

TORRUELLA, Circuit Judge.

On April 12, 1989, a federal grand jury returned a one-count indictment charging Richard Guyon with bank fraud in violation of 18 U.S.C. § 1344. Following a jury trial, Guyon was convicted *in absentia.* Guyon was subsequently apprehended, placed in federal custody, and returned to Massachusetts. The court then sentenced Guyon to 30

---

* Chief Judge Stephen Breyer heard oral argument in this matter but did not participate in the drafting or the issuance of the panel's opinion. The remaining two panelists therefore issue this opinion pursuant to 28 U.S.C. § 46(d).

months incarceration. Guyon now challenges his conviction and sentence on several grounds. We find that none of these grounds warrant reversal and thus affirm the district court.

## BACKGROUND

### A. Statement of Facts

The indictment alleged that from February 24, 1987 to approximately August 14, 1988, Guyon willfully and knowingly executed a scheme to defraud the Bank of Boston of $76,756.40. The testimony and other evidence properly introduced at trial, viewed in the light most favorable to the verdict, established the following facts. *See United States v. Rivera–Santiago,* 872 F.2d 1073, 1078–79 (1st Cir.), *cert. denied,* 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989).

Guyon applied for a series of student loans from the Bank of Boston, called Alliance loans, listing his own name as the student applicant. In addition, Guyon applied for and received Alliance loans in the name of 1) his father, Raymond Guyon; 2) Mary Garber; and 3) Tonya Mayes. Guyon forged the applications and signatures for these loans. The loan applications also contained the forged certifications of a purported University official.

In addition to these Alliance loans, evidence was introduced regarding other loan applications which Guyon fraudulently filed. These other loans, however, were not the subject of the indictment. This evidence included: 1) applications for two Massachusetts Higher Education Loans through the Bank of Boston in November 1988, which were not granted; 2) a fraudulent application for a $20,000 Excel student loan filed in September 1988; 3) fraudulent applications for two $15,000 "Consern" loans from the National Bank of Washington, one in Guyon's own name and one in the name of Mary Garber, as well as an application for a $25,000 "Consern" loan in the name of Tonya Mayes; 4) a fraudulent application for a guaranteed student loan for $7,500 through the First Security Bank of Idaho, which Guyon did in fact receive.

### B. The Proceedings in the District Court

Guyon was arraigned on June 29, 1989. On November 16, 1989, Guyon filed a motion to dismiss the indictment based on a failure to comply with the Speedy Trial Act. At a hearing on December 8, 1989, Guyon withdrew this motion because the government stated it was going to dismiss the indictment. The case was never dismissed. On February 1, 1991, the case was reassigned to Judge Robert Keeton. Prior to reassignment, the case was "inadvertently" closed by the U.S. District Court Clerk's office, but was then reopened upon being reassigned to Judge Keeton.

On February 1, 1991, the parties jointly filed a "Status Report and Motion for Continuance Under the Speedy Trial Act," and this report informed the court that the case was still pending because subsequent to the December 8, 1989 hearing, the parties had learned that Guyon was the subject of a separate but related criminal investigation by the U.S. Attorney's Office in Virginia, and as a result the parties had then engaged in negotiations to resolve potential charges in both districts. The parties additionally requested a continuance from the court until such a resolution had been achieved and asked that the court designate all time from the date of indictment until resolution of the negotiations as excludable delay.

On February 15, 1991, the court held a status conference, at which it issued an order excluding all time from the date of indictment through February 15 because of the previous stay pending plea negotiations. Defense counsel did not object.

On June 3, 1991, new counsel for Guyon, Mr. Evan Slavitt, filed a motion to dismiss the indictment based on a violation of the Speedy Trial Act. On June 13, 1991, the court held a hearing with respect to this motion, and after the court explained its excludable delay orders, denied the motion.

Trial commenced on June 17, 1991, and Guyon was represented by a third counsel. On June 26, the fourth day of trial, the court adjourned for the day while the government was in the middle of its cross-examination of

Guyon, who testified in his own defense. On June 27, Guyon did not appear in court and the case was continued until the next day. On June 28, the court held an evidentiary hearing regarding Guyon's continued absence. Following this hearing, the court determined that Guyon's absence was voluntary and the court ordered that the trial be completed with Guyon *in absentia.* The court found:

> [O]n the evidence before me I find it overwhelming that Mr. Guyon has voluntarily absented himself from this trial, so in accordance with Rule 43(b)(1), I find that he is voluntarily absent after the trial is commenced and I will order that the proceedings continue through the return of a verdict under Rule 43 proceedings.

Defense counsel refused to waive redirect of Guyon, and moved for a mistrial. The court denied the motion. The defense then rested, and the trial was completed that day. The jury returned a guilty verdict.

Law enforcement officials apprehended Guyon on July 15, 1991, in Wyoming, and returned him to Massachusetts. On December 10, 1991, the court sentenced Guyon to 30 months imprisonment. Guyon now raises several issues on appeal.

### GUYON'S MOTION TO DISMISS

■ Guyon claims that the district court violated his statutory and due process rights by failing to rule on his motion to dismiss based on a violation of the Speedy Trial Act. As a basis for this argument, Guyon claims that he originally filed the motion to dismiss on November 16, 1989, and that this motion was never heard or decided by the court because the government requested, and the court granted, a dismissal of the case.[1] Guyon claims that the case was then "reopened" fourteen months later in February 1991, but the court failed to rule upon the November 16, 1989 motion to dismiss.

The government contends that Guyon's argument is based on an incorrect statement of the record below, and that the court did address and resolve the Speedy Trial Act issue.

Guyon's contention that the district court deprived him of his statutory and due process rights is unfounded. Guyon's initial November 16, 1989 motion to dismiss was never expressly ruled upon because he withdrew that motion from the court's consideration, based on the government's representation that it would dismiss the indictment. When the government did not dismiss the indictment, Guyon's counsel filed a second motion to dismiss, which reargued some of Guyon's original Speedy Trial Act contentions. Glaringly absent from Guyon's brief is any reference to this second "Motion to Dismiss for Violation of the Speedy Trial Act (18 U.S.C. § 3161 et. seq.)" which Attorney Slavitt filed on June 3, 1991. On June 13, 1991, the court held a hearing with respect to this motion. At this hearing, the court reminded Guyon that the court had entered an order excluding all time from the indictment until February 15 based on the stay pending plea negotiations, and that Guyon did not object to this order.[2] The court then appropriately denied

---

1. Guyon makes much of the fact that at the December 8, 1989 hearing, the government stated that it would dismiss the indictment, and Guyon concludes that the case must have therefore been dismissed. Guyon's reading of the record is incorrect. While the government indicated orally in the December 8, 1991 hearing that it would dismiss the indictment, the court then stated that it would entertain a dismissal if the government filed it in writing. The government never did file a written dismissal because it subsequently learned that the U.S. Attorney's Office in the Eastern District of Virginia was investigating similar charges against Guyon. The parties then attempted to negotiate a resolution of all charges against Guyon before any dismissal was filed in the District of Massachusetts or any other action was taken. The indictment was therefore never dismissed. Confusion regarding the record may stem from the fact that the Clerk's office inadvertently closed its file in this case and thereafter clerically "reopened" the case.

2. Guyon does not challenge the court's order excluding this time on appeal, nor could he because Guyon's counsel failed to take exception to the entry of the court's order in the district court and he has therefore waived his right to object. *See United States v. Brown,* 736 F.2d 807, 808 n. 1 (1984) (stating that the government's failure to object to court's order of excludable delay resulted in binding the government to the district court's unchallenged computation), *appeal after remand,* 770 F.2d 241 (1st Cir.1985), *cert. denied,*

the motion. We are at a complete loss to understand how Guyon can argue that, based on the particular travels of this case, he was somehow denied his statutory or due process rights.

## PROCEEDING WITH THE TRIAL WITH GUYON IN ABSENTIA

■ A criminal defendant has a constitutional right to be present at his trial. This right is rooted in the due process clause and the confrontation clause of the Constitution. *United States v. Latham*, 874 F.2d 852, 857 (1st Cir.1989). The United States Supreme Court has held, however, that during the course of a trial, if a defendant voluntarily absents himself from the proceedings, it "operates as a waiver of his right to be present and leaves the court free to proceed with the trial in like manner and with like effect as if he were present." *Latham*, 874 F.2d at 857 (quoting *Diaz v. United States*, 223 U.S. 442, 455, 32 S.Ct. 250, 254, 56 L.Ed. 500 (1912)); *United States v. Lochan*, 674 F.2d 960, 967 (1st Cir.1982). Fed.R.Crim.P. 43(b) also permits a court to continue with a trial if a defendant, who is initially present, voluntarily absents himself after the trial has commenced.[3]

■ When a court is faced with the issue of whether or not to proceed with a trial, the court must first determine whether the defendant is, in fact, "voluntarily" absent from the proceedings. *Lochan*, 674 F.2d at 967; *Latham*, 874 F.2d at 857. If so, the court must next analyze a "complex of issues," which include: the ability to apprehend the defendant; the difficulty of rescheduling the trial until the defendant is present; and the burden on the government in holding two trials. *Latham*, 874 F.2d at 857–58. The court should only allow the trial to proceed if the interest of the public in

proceeding with the trial clearly outweighs the interest of the absent defendant. *Id.* at 857. We review a district court's decision to proceed with trial for an abuse of discretion. *See Latham*, 874 F.2d at 857; *Lochan*, 674 F.2d at 968.

■ Guyon contends that the district court abused its discretion by proceeding with the trial after Guyon had "voluntarily absented" himself from the trial proceedings. Guyon apparently does not take issue with the court's finding that Guyon's absence from the proceedings was voluntary.[4] Rather, Guyon contends that the court committed reversible error by failing to inquire into the "complex of issues" to determine if the trial should proceed.

The government concedes that the court did not explicitly articulate its findings or reasoning with respect to this second inquiry, but argues that the facts clearly support the court's decision to proceed with the trial under this analysis.

Despite the absence of an express finding by the district court with respect to the "complex of issues" inquiry, the facts support the court's decision to proceed with trial. *See, e.g., United States v. Muzevsky*, 760 F.2d 83, 85 (4th Cir.1985). The public's interest in proceeding with trial clearly outweighed Guyon's interest in delaying the proceedings. First, there appeared to be little possibility that the trial could soon take place with Guyon present. The evidence that Guyon was voluntarily absent was, as the district court noted, "overwhelming." The record indicates that after the court postponed the trial for one day in order to locate Guyon, an FBI agent testified that Guyon had checked out of the hotel where he had been staying on June 27, 1991. Moreover, the FBI had

---

474 U.S. 1064, 106 S.Ct. 816, 88 L.Ed.2d 789 (1986).

**3.** Fed.R.Crim.P. 43(b) provides in pertinent part: The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present,
1) is voluntarily absent after the trial has commenced (whether or not the defendant has

been informed by the court of the obligation to remain during the trial), ...

**4.** A trial court's finding pursuant to Fed. R.Crim.P. 43(b) that a defendant has voluntarily absented himself from trial should be upheld unless clearly erroneous. *Lochan*, 674 F.2d at 967. There is ample evidence in the record to support the court's finding that after the fourth day of trial, Guyon checked out of his hotel room and fled.

conducted a thorough, yet unsuccessful, search to find Guyon, and there was no indication that government agents would soon apprehend him.

There also would have been a heavy burden on the government to retry this case. Guyon fled at the end of a five day trial. The government had rested, after presenting 18 witnesses, a number of whom were from out of state. Guyon made a number of admissions on direct examination, and then fled in the middle of his own cross-examination. For example, Guyon admitted forging school certifications. He also admitted that he obtained multiple loans in the names of other individuals. To retry the case, the government would be required to remarshall its resources and repeat its entire presentation.

Guyon's interest in delaying the trial did not outweigh the public's interest in having the case proceed to verdict. Guyon fled at the eleventh hour, in an apparent attempt to manipulate the trial process in the exact manner that Fed.R.Crim.P. 43(b) is designed to prevent. *See Crosby v. United States,* — U.S. —, —, 113 S.Ct. 748, 751, 122 L.Ed.2d 25 (1993) (Fed.R.Crim.P. 43(b) is designed to preclude a defendant from manipulating the proceedings against him by voluntarily absenting himself from trial, thus thwarting a trial that has already begun). Guyon argues that the court's decision to proceed unfairly prejudiced him because his testimony on redirect examination could have been "particularly significant" to his defense. Guyon fails, however, to shore up this speculation and state what testimony would have been elicited on redirect which would have aided his defense and would have explained, rebutted or otherwise counterbalanced the damaging admissions he made during the course of his own direct examination. Based on these facts, we do not believe that the court abused its discretion by proceeding with the trial, and any error the court made in failing to make explicit findings with respect to the "complex of issues" analysis was harmless.

### FEDERAL RULE OF EVIDENCE 404(b)—OTHER CRIMES EVIDENCE

Guyon argues that the district court abused its discretion by admitting evidence of applications for loans which were not charged in the indictment, as evidence of other acts and crimes pursuant to Fed. R.Evid. 404(b). Guyon contends that the court failed to engage in the appropriate two prong analysis under Fed.R.Evid. 404(b) when it admitted the evidence. Guyon further argues that the evidence was unduly prejudicial, and therefore, the court's decision to admit it was an abuse of discretion. Guyon also claims that the court abused its discretion by admitting evidence of his credit history.

The government argues that Guyon's contentions ignore the record below, and that the challenged evidence was admissible pursuant to Fed.R.Evid. 404(b).

 Evidence is admissible under Fed. R.Evid. 404(b) when it satisfies a two step analysis by the district court.[5] First, the court must determine if the evidence is being offered to show something other than that the defendant acted in conformity with a "bad" character. *United States v. Rivera–Medina,* 845 F.2d 12, 15 (1st Cir.), *cert. denied,* 488 U.S. 862, 109 S.Ct. 160, 102 L.Ed.2d 131 (1988); *United States v. González–Sánchez,* 825 F.2d 572, 579–80 (1st Cir.), *cert. denied,* 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987). The court must find that the "evidence has some 'special' probative value showing intent, preparation, knowledge or absence of mistake." *United States v. Garcia,* 983 F.2d 1160, 1172 (1st Cir.1993) (citations omitted); *Rivera–Medina,* 845 F.2d at 15; *González–Sánchez,* 825 F.2d at 579. Second, the court must balance the probative value of the evidence against the danger of undue prejudice to the defendant, which may arise from admitting the evidence. *Garcia,* 983 F.2d at 1172; *Rivera–Medina,* 845 F.2d at 15–16; *González–Sán-*

---

5. Fed.R.Evid. 404(b) provides in pertinent part: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge . . .

*chez,* 825 F.2d at 580. The decision to admit Fed.R.Evid. 404(b) evidence is committed to the sound discretion of the district court, and we will only disturb such a ruling on appeal if the court abused its discretion. *Garcia,* 983 F.2d at 1172.

Pursuant to Fed.R.Evid. 404(b), the government introduced evidence at trial of Guyon's applications for the Massachusetts Higher Education Loans, the Excel loan, the "Consern" loans, and the First Security Bank of Idaho student loans. As a preliminary matter, the record belies Guyon's contention that the district court applied an incorrect legal standard by failing to engage in the second step of the Rule 404(b) analysis, which requires that the court balance the probative value of the evidence against its prejudicial impact. When the court addressed the admissibility of the uncharged loan evidence generally at a hearing before trial, the court stated that it would "address 404(b) problems with a twofold analysis," making it clear that the court was cognizant of the appropriate mode of evaluation. Moreover, on one occasion when specific uncharged loan evidence was offered during the course of the trial and then objected to by defense counsel, the court indicated that the probative value of the evidence outweighed any prejudice.

The court did not abuse its discretion by admitting the uncharged loan evidence. First, the evidence had "special" relevance in that it was probative of Guyon's intent when he applied for the various loans. Intent was a disputed issue that was central to this case. During trial, Guyon's counsel repeatedly argued that Guyon did not intend to defraud anyone. To counter this defense and prove its allegations, the government proffered evidence of the uncharged loans to establish intent and *modus operandi.* There was a striking similarity between the evidence of charged and uncharged loans, and this evidence helped show that Guyon was engaged in a widespread scheme to fraudulently apply for a number of loans, using the same pattern of activity in each instance, in order to defraud various banks. For example, Guyon forged the name of "Tonya Mayes" and "Mary Garber" on both charged and uncharged loan applications. This evidence was therefore precisely the type of evidence that Fed.R.Evid. 404(b) permits in order to help prove Guyon's plan and intent.

With respect to the second step in the Rule 404(b) analysis, Guyon argues that this evidence was unfairly prejudicial to him, and he argues that the jury was likely to have attributed much significance to this uncharged loan evidence. We agree that this evidence, like most evidence offered against a defendant, is prejudicial. That is not, however, the issue. Rather, the question is whether the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. *Garcia,* 983 F.2d at 1173; *González–Sánchez,* 825 F.2d at 581.

The district court concluded that the probative value of the evidence outweighed the possibility of unfair consideration by the jury. We believe that the record supports the court's conclusion, and that the court's instructions to the jury regarding the limited purpose of this evidence, to show intent, cushioned the impact and reduced any possible prejudice. We will therefore not disturb the ruling.

Guyon next argues that the court abused its discretion in admitting evidence of the two uncharged Massachusetts Higher Education loans that Guyon applied for through the Bank of Boston, which included credit reports compiled by the bank. Guyon's counsel objected to the admission of these credit reports, arguing that adverse credit information in the reports was unfairly prejudicial. Counsel additionally requested that the credit histories be redacted. The court overruled the objection, but gave a limiting instruction that the only purpose of the evidence was to help understand what information the bank had when it decided whether or not to make the loan.

With respect to the Rule 404(b) two prong analysis, we agree that the evidence was relevant as to how the Bank of Boston made its loan decisions, and the evidence was not admitted to show that Guyon had a bad character. Second, the probative value of this evidence was not outweighed by any unfair prejudice. Credit histories are fairly

routine evidence, and are not the type of evidence that typically elicits an irrational reaction from the jury. Moreover, Guyon has not pointed to anything specific in his credit history that was particularly prejudicial. Consequently, Guyon has not shown that the court abused its discretion in admitting the evidence. We therefore uphold the district court's ruling.

## CALCULATING LOSS UNDER THE SENTENCING GUIDELINES

At sentencing, the court determined that the appropriate guideline to be applied in this case was the 1988 version of U.S.S.G. § 2F1.1, for crimes involving fraud and deceit. The court found that the loss involved in this case, including consummated and unconsummated loans, exceeded $200,001 and was less than $500,000, and therefore pursuant to U.S.S.G. § 2F1.1(b)(1)(H), the base offense level of six was to be increased seven levels. Guyon objected to the court's calculation and argued that the court should not include unconsummated loans in the loss calculation. Accordingly, Guyon argued that the correct figure was $200,000 or less, thus yielding an increase of only six levels. The court then made the following findings:

> [W]hen I look at the offense characteristics and take account of what the other victims of the offenses that were part of this pattern, excluding the Virginia offenses, have suffered, it's pretty clear it gets above two hundred thousand.

In deciding to include the unconsummated loans, the court found as a factual matter that Guyon intended to defraud the banks of the amount of the loan applications and refused to discount this amount by assuming that had Guyon actually obtained the loan, he would have used the proceeds to pay off other loans. The court stated:

> I am very clear that at least the guidelines authorize me in the exercise of discretion

to take those into account and when I do we're way above the $200,001 floor.

On appeal, Guyon now raises the issue of the meaning of "loss" in the sentencing guidelines covering fraud. Guyon seemingly argues that the court committed an error of law by measuring loss by the amount that Guyon *intended* to obtain fraudulently from the various banks. Guyon maintains that instead the correct legal basis for increasing the sentence was the *actual* loss resulting from his criminal conduct.

The court did not commit any error in calculating loss on the basis of intended loss. U.S.S.G. § 2F1.1 applies to crimes involving fraud and deceit, and the offense level increases commensurately with the magnitude of the loss. U.S.S.G. § 2F1.1(b)(1)(H) (1988) mandates an increase of seven levels to the base offense level when the "loss" is between $200,001 and $500,000. Application Note 7 of the Commentary to this Guideline deals with the valuation of loss. The 1988 version of Application Note 7 provided in pertinent part:

> In keeping with the Commission's policy on attempts, if a probable or intended loss that the defendant was attempting to inflict can be determined, that figure would be used if it was larger than the actual loss
> . . .

U.S.S.G. § 2F1.1, comment (n. 7) (1988). The court therefore correctly applied the law and acted well within its discretion when it calculated loss on the basis of intended loss instead of actual loss, and found that the unconsummated loans Guyon applied for should have been included in the intended loss figure.[6]

*For the foregoing reasons, we affirm Guyon's conviction and sentence.*

---

6. On appeal, Guyon seemingly does not challenge the court's factual finding with respect to the unconsummated loans, that Guyon intended to cause the banks loss in the amount that he requested in the loan applications, and the court's refusal to accept Guyon's contention that he would have used the loan proceeds to pay off other loans. Even assuming that Guyon did make such a challenge, the court's factual finding would not be disturbed unless it was clearly erroneous. 18 U.S.C. § 3742(e); *United States v. Ruiz*, 905 F.2d 499, 507 (1st Cir.1990). There is evidence in the record which supports this finding and we do not believe that it is clearly erroneous.