UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 93-2346

UNITED STATES,

Appellee,

v.

ESPERANZA AGUILAR-ARANCETA,

Defendant - Appellant.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. P rez-Gim nez, U.S. District Judge] 



Before

Torruella, Chief Judge, 

Bownes, Senior Circuit Judge, 

and Stahl, Circuit Judge. 



Rachel Brill, by Appointment of the Court, for appellant. 
Esther Castro-Schmidt, Assistant United States Attorney, 
with whom Guillermo Gil, United States Attorney, and Jos A. 
Quiles-Espinosa, Senior Litigation Counsel, were on brief for 
appellee.



July 13, 1995


TORRUELLA, Chief Judge. Esperanza Aguilar-Aranceta TORRUELLA, Chief Judge. 

("Aguilar-Aranceta") was convicted for possession of cocaine with

intent to distribute, in violation of 21 U.S.C. 841(a)(1). She

now appeals. For the following reasons, we reverse.

I. STATEMENT OF FACTS I. STATEMENT OF FACTS

On September 22, 1990, Aguilar-Aranceta went to pick up

two parcels at the United States Post Office in Old San Juan,

Puerto Rico. Two yellow slips had been left in her mail box

prior to that date notifying her that there were two registered

parcels addressed to her at the post office.1 Addressing

Aguilar-Aranceta in English, the window clerk at the post office

counter asked for identification to verify the signature on the

two slips. Aguilar-Aranceta responded by immediately retrieving

a Puerto Rican driver's license from her purse. After verifying

the signatures, the window clerk brought her two packages with

return addresses from Medell n, Colombia. Both packages were

addressed to Esperanza Aguilar, P.O. Box 5739. Box 5739 was

rented to Aguilar-Aranceta. Aguilar-Aranceta pointed at the

return addresses on the packages and stated "no me (sic) family,"

to which the attendant replied that it was up to her if she

wanted to take them or not. The window clerk left the packages

on the counter and once again the defendant said "no me (sic)

family," and once again the clerk replied that it was up to her

if she wanted to take them or not. Defendant then proceeded to
 

1 These yellow slips were the second set of slips placed in
defendant's mail box. The first set of slips were recovered from
defendant's purse after her arrest.

-2-

take the two packages. Immediately upon exiting the lobby of the

Post Office defendant was detained and placed under arrest. The

two packages she was carrying had been intercepted by a mail

specialist earlier and found to contain approximately 224 grams

of cocaine. Aguilar-Aranceta never opened the packages.

On September 26, 1990, a federal grand jury in San

Juan, Puerto Rico, returned a two count indictment against

defendant, charging her with unlawful possession of approximately

224 grams of cocaine with the intent to distribute, in violation

of 21 U.S.C. 841(a)(1) (count one); and with importation of the

same cocaine to the United States from Medell n, Colombia, in

violation of 21 U.S.C. 952(a) (count two). Aguilar-Aranceta

entered pleas of not guilty as to both counts. The jury returned

a verdict of not guilty as to the importation count, but was

unable to reach a unanimous verdict as to the count alleging

possession with intent to distribute. The district court

declared a mistrial as to count one and subsequently granted the

government's request for a new trial.2

After a second jury trial in June 1993, Aguilar-

Aranceta was convicted for possession of cocaine with the intent

to distribute. Aguilar-Aranceta now appeals.

 

2 On March 18, 1991, defendant filed a motion to dismiss count
one on the grounds that a second prosecution would constitute a
violation of her fifth amendment right not to be twice put in
jeopardy for the same conduct. The district court denied this
motion, a ruling we affirmed on appeal. See United States v. 
Aguilar-Aranceta, 957 F.2d 18 (1st Cir.), cert. denied, 113 S. 
Ct. 105 (1992). 

-3-

II. DISCUSSION II. DISCUSSION

To convict Aguilar-Aranceta under 21 U.S.C. 

841(a)(1), the government was required to show beyond a

reasonable doubt that she knowingly possessed a controlled

substance with the intent to distribute.3 United States v. 

Bergodere, 40 F.3d 512, 518 (1st Cir. 1994), cert. denied, 115 S. 

Ct. 1439 (1995). The government presented evidence concerning

Aguilar-Aranceta's prior conviction for possession of cocaine.

The district court admitted this evidence as relevant to the

issue of whether Aguilar-Aranceta was in knowing possession of 

cocaine when she was arrested at the Old San Juan Post Office in

1990. Aguilar-Aranceta contends that all evidence pertaining to

her prior conviction serves no other purpose than to demonstrate

a propensity for criminal activity and should therefore have been

excluded under Federal Rule of Evidence 404(b).

A. Admissibility of Prior Bad Acts A. Admissibility of Prior Bad Acts 

This circuit is no stranger to the problems surrounding

the admissibility of extrinsic act evidence under Rule 404(b).4
 

3 21 U.S.C. 841(a)(1) provides, in pertinent part:

[I]t shall be unlawful for any person
knowingly or intentionally . . . [to]
possess with intent to manufacture,
distribute, or dispense, a controlled
substance.

4 Federal Rule of Evidence 404(b) provides, in relevant part:

Evidence of other crimes, wrongs, or acts
is not admissible to prove the character
of a person in order to show action in
conformity therewith. It may, however, be
admissible for other purposes, such as

-4-

See, e.g., United States v. Guyon, 27 F.3d 723, 728-29 (1st Cir. 

1994); United States v. Fields, 871 F.2d 188, 195-99 (1st Cir. 

1989); United States v. Mateos S nchez, 864 F.2d 232, 234-38 (1st 

Cir. 1988); United States v. Oppon, 863 F.2d 141, 144-48 (1st 

Cir. 1988). We have adopted a two-part test to determine the

admissibility of such evidence. Oppon, 863 F.2d at 146. First, 

the trial judge must determine whether the evidence in question

is offered for any purpose other than solely to prove that the

defendant had a propensity to commit the crime in question.

United States v. Garc a, 983 F.2d 1160, 1172 (1st Cir. 1992); 

United States v. Moccia, 681 F.2d 61, 63 (1st Cir. 1982). That 

is, the judge must determine whether the evidence has some

"special" probative value. United States v. Arias-Montoya, 967 

F.2d 708, 709 (1st Cir. 1992). Prior bad acts may be "specially

relevant" if they are probative of motive, opportunity, intent,

preparation, plan, knowledge, identity, or absence of mistake or

accident. See, e.g., Guyon, 27 F.3d at 728; Garc a, 983 F.2d at 

1172.

If the judge is satisfied that the proffered evidence

has "special relevance," the focus shifts to the second part of

the test, which applies Rule 403 to determine whether the

probative value of the evidence is "substantially outweighed by

 

proof of motive, opportunity, intent,
preparation, plan, knowledge, identity,
or absence of mistake or accident . . . .

-5-

the danger of unfair prejudice."5 Fed. R. Evid. 403; Guyon, 27 

F.3d at 728-29; Garc a, 983 F.2d at 1172. On appeal, we review 

the Rule 404(b) determination for abuse of discretion. Guyon, 27 

F.3d at 728-29; United States v. Cassiere, 4 F.3d 1006, 1022 (1st 

Cir. 1993); see also Garc a, 983 F.2d at 1172. 

B. Special relevance under Rule 404(b) B. Special relevance under Rule 404(b) 

Applying these principles to the facts at hand, we

first must determine whether the district court abused its

discretion in finding that Aguilar-Aranceta's 1986 conviction for

misdemeanor possession of cocaine was specially relevant to the

issue of knowledge in the present case. Although the law

regarding prior bad acts as evidence of knowledge is well

settled, it is complex and merits some discussion.

In prosecutions for "possession" offenses,6 the

central issue is often whether the defendant was in knowing 

possession. The knowledge element is difficult to prove, and

defendants commonly claim that they were merely innocent

bystanders or unwitting participants. Where the evidence is
 

5 Fed. R. Evid. 403 states:

Although relevant, evidence may be
excluded if its probative value is
substantially outweighed by the danger of
unfair prejudice, confusion of the
issues, or misleading the jury, or by
considerations of undue delay, waste of
time, or needless presentation of
cumulative evidence.

6 Possession offenses include, inter alia, possession of 
narcotics, possession of stolen merchandise, and possession of
firearms.

-6-

susceptible to the explanation that the acts alleged to

constitute the crime were innocently performed and the crucial

issues of intent and knowledge are keenly disputed, we have held

that it is within the judge's discretion to permit the government

to introduce evidence of prior similar offenses to demonstrate

the unlikeliness that the defendant was merely an innocent and

unknowing bystander. For example, in United States v. Spinosa, 

982 F.2d 620 (1st Cir. 1992), we held that evidence concerning

the defendant's history of cocaine possession and dealing was

probative of his knowledge and intent to participate in cocaine

transaction charged because it directly contradicted his defense

that he was involved only by accident or mistake. 

The justification often advanced for admitting evidence

of other crimes to prove knowledge is that no inference as to the

defendant's character is required. See United States v. Ferrer- 

Cruz, 899 F.2d 135, 138 (1st Cir. 1990); see also 22 Charles A. 

Wright & Kenneth A. Graham, Jr., Federal Practice and Procedure, 

5245 (1978). Rather, the probative value emanates from the law

of probabilities. We consider the following example illustrative

of the permissible inferential chain:

The fact that an illegal alien was
previously found stowed away under the
hood of defendant's car does not prove
that a second alien found there did not
creep in undetected while the car was
parked. However, it does seem unlikely
that the same person could be twice
victimized in this fashion, particularly
when a reasonable person who had
previously gotten into trouble in this
way would probably take care to see that

-7-

he had only an engine under the hood
before heading for the border.

22 Wright & Graham, supra, 5245. Along these lines, we also 

have explained that jurors might permissibly hypothecate that the

defendant's repetitive involvement in criminal conduct is

unlikely to have left her oblivious to the true character of the

acts in question. See, e.g., Ferrer-Cruz, 899 F.2d at 138 

(noting that "[s]ince one who has previous experience with drugs

is more likely to see 'car switching' as part of drug sale

technique than one who has no such experience, . . . the

inferences at issue do not involve character"); United States v. 

Simon, 842 F.2d 552 (1st Cir. 1988); United States v. Estabrook, 

774 F.2d 284, 288 (8th Cir. 1985).

"There is, however, a danger that the supposed

inferences to knowledge will be obscured by the forbidden

inference to propensity, particularly in cases in which the

theory of knowledge is the probability that the defendant would

have obtained knowledge in the course of repetitive involvement

in criminal conduct." Wright & Graham, supra, 5245. It is, 

therefore, important to explain what inferences are

impermissible. It is impermissible to suggest that a defendant's

prior conviction for possession of cocaine somehow makes her more 

likely to have acted in a similar manner in the context of the 

present possession charges. Similarly, a prosecutor may not

argue that the defendant's prior conviction for a drug offense

demonstrates her propensity for involvement in drug trafficking.

-8-

Moving to the present case, we note that the

circumstances surrounding Aguilar-Aranceta's 1986 conviction are

similar to those of the present charges in several significant

aspects. We have held that similarity between the prior act and

the current charges is often the predominant factor or touchstone

in the test for special relevance as to defendant's knowledge.

See United States v. Arias-Montoya, 967 F.2d at 712-13 

(summarizing circumstances which would constitute "special

relevance," including that prior bad acts (1) closely mirrored

the newly charged crime, (2) were part of a common scheme or a

course of continuous dealing, or (3) provided the context for the

newly charged crime); see also United States v. Hadfield, 918 

F.2d 987, 994 (1st Cir. 1990) (upholding admission of evidence

concerning prior drug involvement in a drug trafficking case

because the past actions were "proximate in time and closely

allied with the type of crimes for which appellants were being

tried"), cert. denied, 500 U.S. 936 (1991). Here, both cases 

involved packages containing cocaine that had been shipped to

Aguilar-Aranceta's post office box at the Old San Juan Post

Office. In both instances, the packages were addressed to

Aguilar-Aranceta with return addresses indicating that they had

been sent from Medell n, Colombia. The cases differ with regard

to the circumstances of arrest. In 1986, the authorities

followed Aguilar-Aranceta from the Old San Juan Post Office and

arrested her at her home. In the present case, Aguilar-Aranceta

was arrested before she left the Post Office Building. In both

-9-

cases Aguilar-Aranceta had not opened the packages at the time of

her arrest. In the 1986 case, the unopened packages had been in

her possession for several hours.

With regard to whether the prior conviction clears the

special relevance hurdle, it is a close call. We are

particularly concerned with the four-year period between her

prior conviction and the facts leading to the present charges as

well as the fact that the packages were unopened in both

instances. Nevertheless, we do not find that the district court

abused its discretion in concluding that the 1986 conviction is

so similar that it is relevant to the issue of knowledge in the

present case. A jury could have permissibly made the following

inferential analysis: many people in the general population have

little or no knowledge of how narcotics traffickers use the mail

system to ply their trade, and for this reason might unwittingly

accept two packages sent to them from an unfamiliar address in

Medell n, Colombia. Aguilar-Aranceta's prior conviction for

possession of cocaine that had been mailed to her from Medell n,

Colombia suggests that she cannot plausibly make this claim. See 

United States v. Nickens, 955 F.2d 112, 124-25 (1st Cir.) 

(holding that where defendant claimed to have been an innocent

dupe with regard to cocaine found in his luggage, his prior

narcotics conviction was relevant to issue of knowledge because a

jury might permissibly infer that someone who has experience

selling cocaine is more likely to know how drug smugglers

operate), cert. denied, 113 S. Ct. 108 (1992). Of course, her 

-10-

prior conviction does not conclusively prove that Aguilar-

Aranceta knew that the packages contained contraband.

Nevertheless, we think that the jury permissibly could have

inferred that someone with a previous mail-related narcotics

conviction would be reluctant to again accept mysterious packages

from Colombia, and that Aguilar-Aranceta's failure to reject the

packages given her prior experiences bears on the crucial issue

of knowledge. We think that these inferences might be even more

plausible given that Aguilar-Aranceta claims to have been an

unwitting pawn in the events that led to her guilty plea in

1986.7 Accordingly, we find that the district court did not

abuse its discretion in finding that Aguilar-Aranceta's prior

conviction was specially relevant to the issue of knowledge.

C. Rule 403 balancing C. Rule 403 balancing 

We now consider whether the district court should

nevertheless have excluded the evidence under Rule 403. The

tenets of Rule 403 balancing are familiar and often quoted: "If

the evidence brings unwanted baggage, say, unfair prejudice or a

 

7 Aguilar-Aranceta testified regarding the events surrounding
her 1986 conviction. She testified that Jos Perales
("Perales"), a man she had met while studying, asked to borrow
her post office box so he could receive some greeting cards from
Colombia. She testified that when the authorities arrived at her
home, she gave them the packages, which were unopened, and told
them about Perales. The authorities waited for a few hours to
see if Perales would arrive, and when he did not, they arrested
her.

She testified that she subsequently pled guilty to possession
of cocaine even though the packages were not hers because she was
in an advanced state of pregnancy and wanted to avoid jail time.
She was sentenced to two years probation. 

-11-

cognizable risk of confusing the jury, and if the baggage's

weight substantially overbalances any probative value, then the

evidence must be excluded." United States v. Rodr guez-Estrada, 

877 F.2d 153, 155 (1st Cir. 1989). We note, however, that, "[b]y

design, all evidence is meant to be prejudicial; it is only

unfair prejudice which must be avoided." Id. at 156. Moreover, 

"[t]he phrasing of Rule 403 makes it clear that the discretion to

exclude does not arise where the balance between the probative

worth and the countervailing factors is debatable; there must be

a significant tipping of the scales against the evidentiary worth

of the proffered evidence." Wright & Graham, supra, 5221 at 

309-10. Accordingly, we review only for abuse of discretion.

United States v. Desmarais, 938 F.2d 347, 351 (1st Cir. 1991). 

Aguilar-Aranceta argues that the legitimate probative

value of her prior conviction, if any, is completely overshadowed

by the danger of unfair prejudice. We agree. The prior

conviction is probative on the issue of knowledge only in an

attenuated manner, dependent on the following "once burned, twice

shy" chain of inferences: (1) someone who has a previous

conviction stemming from the receipt of cocaine-laden packages

would likely be reluctant to innocently and unwittingly accept

mysterious packages from Colombia; and (2) the fact that Aguilar-

Aranceta did in fact accept the packages despite her prior

conviction suggests that she knew their contents. While in some

circumstances this inferential chain might be strongly probative,

the circumstances here render it of limited value. First, we

-12-

note the remoteness in time of her prior conviction. Common

sense dictates that the time span between the events bears

directly on the probative weight of the prior conviction vis-a-

vis the government's "once burned, twice shy" argument. Cf. 

United States v. Lynn, 856 F.2d 430 (1st Cir. 1988) (noting that 

six year period between the prior conviction and the instant

offense significantly diminishes the probative value of the prior

conviction). Second, we note that Aguilar-Aranceta apparently

spoke little or no English. She testified that she was expecting

a letter from her sister and became confused when the window

clerk produced packages with unfamiliar return addresses. She

testified further that she eventually accepted the packages

because the window clerk kept insisting that the packages were

hers even though she repeatedly tried to explain that the

packages were not from her family. Third, we note that the

window clerk was aware that Aguilar-Aranceta would be arrested if

she took the packages, which suggests that he might have been

especially zealous in encouraging her to take the packages. We

think these circumstances limit the probative value of the prior

conviction evidence.

Against the marginal relevance of the prior conviction

evidence, we weigh the danger that it unfairly prejudiced the

jury. Here, we cannot escape the conclusion that the most

powerful inference that the jury was likely to make from the

prior conviction is also the forbidden one: that because she was

previously convicted under nearly identical circumstances, she

-13-

must be guilty here. The specter of impermissible character

evidence is likely to have significantly overshadowed any

legitimate probative value. We find this especially likely given

that there was virtually no other evidence suggesting that

Aguilar-Aranceta was in knowing possession of cocaine. Leaving 

aside her previous conviction, the evidence pertaining to the

defendant's state of mind was equivocal. The government points

out that although Aguilar-Aranceta was poor and was able to

receive mail at her home, she kept a post office box at the Old

San Juan Post Office. Nevertheless, Aguilar-Aranceta was

apparently in no hurry to get the packages. In fact, nine days

passed between the time the first set of claim slips were placed

in Aguilar-Aranceta's box and the time that Aguilar-Aranceta went

to pick up the packages. Similarly, her behavior at the counter

was of uncertain significance. The window clerk could only state

that since she did not expressly refuse the packages, he

continued to leave them on the counter. The government's

argument that Aguilar-Aranceta's demonstrated reluctance was

merely a smokescreen to conceal her knowledge of the contents of

the packages is dubious, especially in light of the fact that the

window clerk could have taken back the packages at any time.

Perhaps because the government's evidence was weak with respect

to the current charges (particularly so because it arrested

Aguilar-Aranceta before she had a chance to open the packages),

it focused the jury's attention on her prior conviction. In any

case, we think that the amount of evidence introduced with

-14-

respect to her prior conviction dramatically increased the

likelihood that the jury convicted Aguilar-Aranceta on the basis

of the 1986 conviction alone rather than on a fair assessment of

the evidence.

The gravity of the unfair prejudice is even more

apparent when one considers that the prior conviction was not

merely one part of the government's attempt to establish Aguilar-

Aranceta's state of mind. It was the entire case. The offense

of possession with intent to distribute cannot be "established by

proof merely that a package containing drugs was mailed from

outside this country and was received and opened by the addressee

of the package inside this country. The threat this would pose

to innocent victims of mere mistake or actual set-ups is

obvious." United States v. Samad, 754 F.2d 1091, 1096 (4th Cir. 

1985). This logic applies with equal or greater force to someone

with a previous conviction for narcotics trafficking. In

essence, admitting Aguilar-Aranceta's prior conviction allowed

the jury to convict her upon facts that would likely have been

insufficient to convict a similarly situated defendant without a

prior conviction. In sum, we think that evidence of Aguilar-

Aranceta's prior conviction should have been excluded because its

marginal probative value, coupled with the scarcity and equivocal

nature of the other evidence relating to the Aguilar-Aranceta's

state of mind, created an unacceptable risk that the jury would

assume that Aguilar-Aranceta had a propensity for narcotics

trafficking and convict on that basis alone.

-15-

D. Harmless error D. Harmless error 

A non-constitutional evidentiary error under Rule

404(b) will be treated as harmless only if it is "highly

probable" that the error did not contribute to the verdict.

Arias-Montoya, 967 F.2d at 714 (citing United States v. Garc a- 

Rosa, 876 F.2d 209, 222 (1st Cir. 1989)). Given the scarcity of 

other evidence pertaining to Aguilar-Aranceta's state of mind, we

think it is highly probable that the evidentiary error did affect

the verdict. Accordingly, we find that the district court's

error was not harmless.8

Reversed. 

 

8 Because we reverse on the 404(b) error, we decline to reach
the other issues raised by Aguilar-Aranceta.

-16-