USA v. Jonathan Tanguay          CR-11-173-JL 11/7/13     P

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

United States of America

    v.                                    Criminal No. 11-cv-173-JL
                                          Opinion No. 2013 DNH 147P
Jonathan Tanguay


**MEMORANDUM ORDER**

A jury in this court recently found the defendant, Jonathan Tanguay, guilty of one count of possessing child pornography. See 18 U.S.C. § 2252A(a)(5)(B). After receiving a report from a visitor to Tanguay's home that Tanguay had displayed images of child pornography on his laptop computer, the New Hampshire State Police secured a warrant to search the home for those materials. This search allegedly turned up images of child pornography on the computer's hard drive, as well as on an external hard drive and a compact disc also seized from Tanguay's home. See United States v. Tanguay, 907 F. Supp. 2d 165 (D.N.H. 2012) (denying Tanguay's motion to suppress the fruits of the search).

This court conducted two jury trials on the charge against Tanguay: one in October 2013, which ended in a conviction, and an earlier trial in March 2013, which ended in a mistrial. Prior to the first trial, Tanguay filed a motion in limine seeking to exclude various items of evidence. See L. Cr. R. 12.1(c). This court granted the motion in part and denied it in part in a

written order.  United States v. Tanguay, 2012 DNH 197 (the "Prior Order").  Before the second trial, Tanguay filed two more motions in limine, seeking to exclude various other items of evidence, much of which the prosecution had not sought to introduce in the first trial.  This evidence consisted principally of other materials allegedly found on Tanguay's computer, including (1) stories graphically describing sexual encounters between male adults and male children, (2) sexually suggestive, but not necessarily pornographic, photographs of either male children or young-looking male adults, located in a folder called "On-Line Friends," (3) pornographic photographs of an 18-year old male identified as "Jared" that Tanguay had shown to a witness who testified at trial, and (4) "bookmarks" to websites with names that suggest sexually explicit material featuring male children.[1]

---

[1]Tanguay also sought to exclude photographs, also found in his possession, of a trial witness--who was involved in an amorous relationship with Tanguay between late 2008 and late 2009--at the witness's senior prom.  The prosecution did not seek to introduce those photographs at trial.  Tanguay further sought to exclude evidence of this witness's age, objecting that it was unfairly prejudicial because he was only 18 years of age at the time the two began their relationship, but the court denied that motion based on the prosecution's agreement to adduce the witness's age only at the time of the trial, rather than at the time he became romantically involved with Tanguay.  While Tanguay maintained that even the witness's age at the time of trial was unfairly prejudicial, the court disagreed.

Tanguay argued that, because his possession of these materials amounts to "other acts," this evidence is inadmissible, Fed. R. Evid. 404(b)(1), and that, in any event, its probative value is substantially outweighed by the danger of unfair prejudice, Fed. R. Evid. 403. The prosecution, however, argued that this evidence was admissible to show, among other things, Tanguay's knowledge that he possessed the child pornography allegedly found on his computer, Fed. R. Evid. 404(b)(2), and that its probative value on that point--which was a crucial issue at trial--outweighed any risk of unfair prejudice under Rule 403.[2] The court heard oral argument on Tanguay's motions prior to trial, then announced its rulings from the bench during a break in the proceedings before the jury, just after trial had commenced. This written order serves to explain those rulings in greater detail.

Under Rule 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character to show that on a particular occasion the person acted in accordance with the character," but "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan,

---

[2]Importantly, the evidence the prosecution sought to adduce was not admissible under either Rule 413 or Rule 414 of the Federal Rules of Evidence, because Tanguay was not accused of "sexual assault" or "child molestation" as those terms are defined by those rules.

3

knowledge, identity, absence of mistake, or lack of accident." And Rule 403 allows the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice."

Synthesizing these rules, the Court of Appeals has "adopted a two-part test to determine the admissibility" of evidence of the defendant's other acts. United States v. Aguilar-Aranceta, 58 F.3d 796, 798 (1st Cir. 1995).

> First, the trial judge must determine whether the evidence in question is offered for any purpose other than solely to prove that the defendant had a propensity to commit the crime in question[,] [t]hat is, . . . has some 'special' probative value. Prior bad acts may be 'specially relevant' if they are probative of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
>
> If the judge is satisfied that the proffered evidence has 'special relevance,' the focus shifts to the second part of the test, which applies Rule 403 to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

Id. (footnote and further quotation marks omitted).

Applying this test, the court ruled at trial that Tanguay's possession of the additional materials found on his computer is relevant to his knowledge that he possessed the images of child pornography found on that computer (as well as on the external hard drive and the CD also seized from his home). Fed. R. Evid. 404(b)(2). The court also ruled that any risk of unfair

4

prejudice from Tanguay's possession of these other materials did not outweigh the evidence's probative value.  Fed. R. Evid. 403.

**Rule 404(b)**

To find a defendant guilty of possessing child pornography, the jury must find, among other things, that the defendant "knowingly possesse[d] . . . material that contains an image of child pornography."  18 U.S.C. § 2252A(a)(5)(B).  In his opening statement, counsel for Tanguay focused on this element of the alleged offense, proclaiming that his client was "innocent . . . .  He didn't put child pornography on any computer . . . . and he didn't know there was child pornography on any computer or gadget or device that the government will put here before you."  Counsel for Tanguay also stated that "[t]he evidence in this case may not tell you everything about how child pornography ended up on some storage device or some hard drive, but it's not going to tell you that Jon Tanguay did this because he didn't do it."  As these comments suggest, a key issue in the case was whether Tanguay knowingly possessed the images of child pornography found on the computer, external hard drive, and CD (as opposed to, for example, whether the images constituted child pornography, or whether they, or the devices that held them, had traveled in interstate or foreign commerce).

5

Rule 404(b), of course, expressly provides that evidence of a defendant's other acts may be admissible to prove knowledge, and the Court of Appeals has upheld the use of the rule to admit such evidence "[i]n prosecutions for 'possession' offenses." Aquilar-Aranceta, 58 F.3d at 798 (footnote omitted). In such cases, the court has recognized,

> the central issue is often whether the defendant was in <u>knowing</u> possession. The knowledge element is difficult to prove, and defendants commonly claim that they were merely . . . unwitting participants. Where the evidence is susceptible to the explanation that the acts alleged to constitute the crime were innocently performed and the crucial issues of intent and knowledge are keenly disputed, . . . it is within the judge's discretion to permit the government to introduce evidence of . . . similar offenses to demonstrate the unlikeliness that the defendant was merely an innocent and unknowing bystander.

That description fits this case to a "T," and makes evidence of the other materials found on Tanguay's computer "specially relevant" to his knowing possession of the child pornography also found there.

Contrary to Tanguay's objection, the logical connection between his possession of the other materials found on his computer and his knowing possession of the child pornography found there, or on other digital storage devices in his home, is not based on an impermissible inference about his character, i.e., his possession of the other materials makes him the type of person who would be more likely to possess child pornography.

6

"Rather, the probative value emanates from the law of probabilities," i.e., "'it does seem unlikely that the same person could be [repeatedly] victimized'" by the placement of such materials on his computer without his knowledge. Id. at 799 (quoting 22 Charles A. Wright & Kenneth A. Graham, Jr., Federal Practice & Procedure § 5245 (1978) (formatting altered)).

This theory of admissibility is known as the "doctrine of chances," and it "has been embraced by the large number of courts and commentators." David P. Leonard, The New Wigmore: Evidence of Other Misconduct and Similar Events § 6.3.1, at 393 (2009). The doctrine of chances "is founded on a logical inference deriving not from the personal characteristics of the actor but from the external circumstances themselves . . . that operates by virtue of a commonsense assumption that, under certain circumstances, the facts of the uncharged and charged incidents make an innocent state of mind highly unlikely." Id. at 392.

Here, the circumstances the prosecution sought to demonstrate are that Tanguay possessed both illegal child pornography, consisting of images of male children engaged in sexually explicit conduct, and other similar materials which, though legal, either described male children engaged in sexually explicit conduct (the stories and the bookmarks) or depicted youthful-looking male adults in sexually suggestive or explicit

7

poses (the photographs, including those of "Jared" that Tanguay had shown to the witness).[3]  Under the doctrine of chances, evidence that Tanguay possessed the latter category of items makes it less likely that he possessed the former category of items (the child pornography) without knowing that he did so--the same way that, for example, a defendant's possession of a cocaine spoon and sifter-grinder in the trunk of his car makes it less likely that he drove the car to various places without knowing that he was participating in a conspiracy to distribute the drug, United States v. Rivera-Rodriguez, 808 F.2d 886, 888 (1st Cir. 1986) (affirming the admission of such evidence as probative of knowledge under Rule 404(b)).

Moreover, such an "inference can be particularly strong if the charged and uncharged acts occur simultaneously."  1 Edward Imwinkelried, Uncharged Misconduct Evidence § 5:28 (1984 & 2013 supp.).  Here, the evidence showed that Tanguay was in possession of both the child pornography and the other, similar materials at the same time, and for that matter, on digital storage devices that were all found in the same place (the prosecution presented evidence, in fact, that the computer had previously been used to

---

[3]While the prosecution acknowledged that "Jared" was 18 at the time the photographs were taken, it expressly did not concede that all of the subjects of the other photographs were 18 when those photographs were taken.

8

access some of the contents of both the external hard drive and the CD).  As just discussed, there is also no question that the other materials in Tanguay's possession are in fact "similar" to the child pornography in his possession, and "similarity between the [other] act and the current charges is often the predominant factor in the test for special relevance as to defendant's knowledge."  Aguilar-Aranceta, 58 F.3d at 799.  Indeed, as the prosecution emphasized, two of the photographs of the 18 year-old "Jared" show him in poses (one, with his hands bound behind his back, the other, focused on his erect genitalia) that are strikingly similar to the poses of the children in two of the images of alleged child pornography, and the stories, like several of the other images or videos of child pornography, depict male children engaged in sex acts with male adults.

As the prosecution also pointed out, a number of courts have upheld the admission of evidence that a defendant facing charges of possessing child pornography also possessed pornographic stories about children, reasoning that it shows the defendant's "knowledge that the images he possessed contained pornography featuring children, and [are] thus admissible under Rule 404(b)." United States v. Phipps, 523 Fed. Appx. 498, 500 (9th Cir. 2013); see also United States v. Flocker, 504 Fed. Appx. 637, 639 (9th Cir. 2013); United States v. Grimes, 244 F.3d 375, 384 (5th Cir.

9

2001); United States v. Miller, No. 09-30136, 2011 WL 166717, at *2 (S.D. Ill. Jan. 19, 2011); cf. United States v. Garot, 801 F.2d 1241, 1246-47 (10th Cir. 1986) (upholding admission of images of child pornography found in defendants' home, which were not the basis for the charges against them, to show their knowledge that a package they received contained additional images of child pornography, which was the basis of the charge).

As noted in this court's Prior Order, courts have applied the same reasoning to evidence of "a defendant's possession of pornography featuring adults who appear young--even if they are in fact adults." Tanguay, 2012 DNH 197, at 14 (citing United States v. Goff, 155 Fed. Appx. 773, 776 (5th Cir. 2005) and United States v. Layne, 43 F.3d 127, 134 (5th Cir. 1995)); see also United States v. Presley, No. 07-5058, 2008 WL 189565, at *2 (W.D. Wash. Jan. 16, 2008) (admitting evidence that defendant possessed "'child erotica,' or pornography featuring adult women advertised as 'barely legal'" to show, among other things, his knowing possession of child pornography, because "the act of possessing child erotica is sufficiently similar to the act of possessing child pornography"). Under Rule 404(b)(2), then, evidence that Tanguay's computer contained the stories, photographs, and bookmarks challenged by his motion in limine was

10

admissible to show his knowledge that his computer, and the other digital storage devices in his home, contained child pornography.

**Rule 403**

After determining that evidence of a defendant's uncharged misconduct is admissible under Rule 404(b), the court must proceed to consider whether the risk of unfair prejudice from that evidence substantially outweighs its probative value so as to make it inadmissible nonetheless under Rule 403. See, e.g., Aguilar-Aranceta, 58 F.3d at 798. The Court of Appeals has observed, however, that "the phrasing of Rule 403 makes it clear that the discretion to exclude does not arise where the balance between the probative worth and the countervailing factors is debatable; there must be a significant tipping of the scales against the evidentiary worth of the proffered evidence." Id. at 800 (bracketing and quotation marks omitted). Furthermore, it is not any prejudice, but "only unfair prejudice which must be avoided" under the rule. Id. (quotation marks omitted).

As just discussed, evidence that Tanguay's computer contained stories describing sexual encounters between male children and male adults, sexually suggestive photographs of youthful male subjects, and bookmarks to websites with titles

indicative of similar material[4] is probative as to whether he knew that the computer, and other digital storage devices in his home, also contained child pornography. As also just discussed, this probative value inheres in the similarity between the child pornography and the other materials, as well as the simultaneity of Tanguay's possession of the child pornography and the other materials (and, again, all of the child pornography and the other materials were found either on the same computer or on external devices that had previously been connected to it).

Tanguay nevertheless maintained that his possession of these other items lacked any probative value. This argument, however, rested almost entirely on the premise that "there is no logical link between the existence of the [items] and the knowing possession of the charged images"--a premise which, based on the foregoing analysis and authorities, this court rejects.

Tanguay also suggested that, because the other materials are "constitutionally protected" and, therefore, legal, they have "nothing to do with whether he knowingly possessed pornographic images of young children," which are illegal. Again, though, a number of courts have ruled otherwise, upholding the admission of pornographic materials that were legal (either because they were

_____

[4]The titles of the bookmarked web pages included "Schoolboy Secrets" and "CumFilledBoys."

12

textual, rather than graphic, depictions of children engaged in sex acts, or because they depicted subjects just over the age of 17) to prove the defendant's knowing possession of illegal child pornography. Tanguay provided no authority to the contrary.

That is unsurprising, because to constitute probative evidence of the defendant's knowledge under the doctrine of chances, the uncharged acts need not be identical, but only "roughly similar," to the charged crime. 1 Imwinkelried, supra, § 5:28; see also, e.g., United States v. Gordon, 987 F.2d 902, 908-09 (2d Cir. 1993) ("There is no necessity for synonymity," just "sufficient similar[ity]" (quotation marks omitted; formatting altered)). Again, the pornographic stories are similar to at least some of the pornographic images in that they both depict male children engaged in sex acts with male adults; the photographs of "Jared" and the "On-Line Friends" are similar to some of the other pornographic images in that they both depict youthful male subjects in sexually explicit poses; and the bookmarks are similar to the child pornography because they archive web pages with titles suggesting that they contain child pornography featuring male children.[5] Moreover, all of the child

_____

[5]Tanguay protested that "[o]ther than the names of the websites, there has been no evidence proffered that the websites contained images of child pornography" at the time the bookmarks were created. But it is the names of the websites (e.g., "CumFilledBoys") that appeared as bookmarks on the web browser on

13

pornography, and all of the other materials, were found at the same time, and in the same geographic location, either on Tanguay's computer or external devices that were previously connected to it.

As already explained, these similarities between the child pornography and the other materials make it less likely that Tanguay knowingly possessed the latter but not the former, in turn making evidence that he possessed those materials probative of his knowledge under the doctrine of chances. (It should be noted that there was additional evidence, beyond their discovery on his computer, that Tanguay knowingly possessed the stories and photographs: a witness testified to having received letters from Tanguay that were saved to the same folder as the stories; that same witness testified to having been shown the photographs of "Jared" by Tanguay.) The sole difference that Tanguay identified--that the other materials are legal while the child pornography is not--does not meaningfully diminish the force of

---

Tanguay's computer, and, as he appears to acknowledge, those names suggest that the sites contain child pornography--and the presence of bookmarks to sites with such names on Tanguay's computer suggests, again, that Tanguay was also aware of the presence of child pornography on his computer. See United States v. Sanchez, 59 M.J. 566, 570 (A.F. Ct. Crim. App. 2003) (relying on defendant's subscriptions "to numerous e-groups described as nude teen sites" in upholding the sufficiency of the evidence for his conviction for knowingly possessing the child pornography also found on his computer), rev'd in part on other grounds, 60 M.J. 329 (C.A.A.F. 2004).

this reasoning nor, in turn, the probative value of evidence that he possessed those other materials.  Indeed, it is hardly unusual that a defendant's possession of legal material, such as instructional literature, is used as evidence of his knowledge that he was engaged in illegal activity, see, e.g., United States v. Brown, 669 F.3d 10, 26-27 (1st Cir. 2012) (citing additional cases), and, again, a number of courts have specifically upheld the use of a defendant's possession of legal pornography depicting either children or young-looking adults as evidence of his knowing possession of child pornography.

Tanguay also argued that evidence he possessed the other materials carried with it an unacceptable risk of unfair prejudice.  As an initial matter, however, this court perceives little risk that the stories, photographs, and bookmarks could have caused any prejudice to Tanguay beyond that he already suffered--and unavoidably so--from the introduction of the child pornography itself.[6]  See United States v. Ebersbach, 489

_____

[6]While Tanguay also moved to exclude the images of child pornography that the prosecution intended to introduce, and offered to stipulate that they constituted child pornography, the prosecution rejected that offer, and the court ruled that the images were admissible based on law from this Court of Appeals and others that, in child pornography cases, a district court need not "scrub the trial clean of all evidence that may have an emotional impact, where the evidence is part of the [prosecution's] narrative." United States v. Morales-Aldahondo, 524 F.3d 115, 120 (1st Cir. 2012); see also, e.g., United States v. Caldwell, 586 F.3d 338, 343 (5th Cir. 2009).  Moreover, as the

15

Fed.Appx. 635, 636 (4th Cir. 2012) (finding a minimal risk of unfair prejudice from the introduction of material that was not child pornography in a child pornography case, given the "introduction of numerous pornographic images that formed the basis of the indictment"); Bolles v. Texas, No. 07-08-0304, 2010 WL 539684, at *5 (Tex. Ct. App. Feb. 16, 2010) (similar).

In any event, Tanguay identified nothing in particular about the stories, photographs, or the bookmarks that convincingly presented any risk of unfair prejudice. While, at trial, Tanguay objected to the stories as "lengthy documents describing sexual assault of children," the prosecution, in response, offered just one of the stories into evidence (though a list of the titles of all of the stories, many of which were sexually suggestive, was also introduced in the form of a screen shot of the contents of

---

prosecution explained during oral argument on the motions in limine, each of the images of child pornography that it introduced had evidentiary value beyond the fact that it was child pornography found in Tanguay's possession, e.g., the image was found in more than one place, or (based on the forensic analysis of Tanguay's computer) had been recently viewed there.

The court also reviewed the images, both during the first trial and again prior to the second, and, while they were indeed disturbing, they did not depict "depraved and violent sexual acts" so that "[e]ven in the cesspool of evidence" typically presented in a child pornography case, the images "st[ood] out." United States v. Cunningham, 694 F.3d 372, 390 (3d Cir. 2012) (ruling that it was error to admit such images). Accordingly, this court ruled that the probative value of the images of child pornography was not substantially outweighed by the risk of unfair prejudice. Fed. R. Evid. 403.

16

the folder from Tanguay's computer).  Evidence that Tanguay possessed a story describing the sexual assault of a child by an adult--presented as the adult's sexual fantasy--is no doubt prejudicial, but not unfairly so, particularly in light of the other evidence that Tanguay possessed actual images of the sexual assault of children by adults.

As to the photographs, Tanguay argued at trial that evidence that he had taken the pictures of "Jared," and therefore "was manufacturing" pornography, carried a particular risk for unfair prejudice.  In response, the court excluded evidence that Tanguay had taken the photographs, but allowed the prosecution to introduce the photographs themselves--as well as testimony from the witness that Tanguay had displayed them--because, again, Tanguay failed to identify anything about that particular evidence that carried a risk of unfair prejudice.

As to the photographs in the "On-Line Friends" folder, Tanguay offered only the assertion that these amounted to "evidence that he was an on-line predator," but that is not a fair characterization of that evidence.  The "On-Line Friends" folder, which consists of a small collection of thumbnail images depicting youthful males in sexually explicit poses, contains no indication that Tanguay was actually in contact, "on-line" or otherwise, with any of the subjects, nor was any other such

17

evidence introduced. Furthermore, the folder had additional probative value in that it was located on both the laptop computer and the external hard drive, though, in the version on the external hard drive, some of the names of the image files had been changed (e.g., from "Wild2" to "HanoverBoy2")--suggesting that the pornographic images had been intentionally, rather than accidentally, copied from the laptop to the external drive. Indeed, courts have recognized that evidence of a defendant's "cyber-fingerprints on all the seized computer materials" is admissible to rebut a defendant's claim (like Tanguay's in this case) that "he was ignorant about the child pornography on his computer equipment and storage media." United States v. Hatfield, 358 Fed. Appx. 692, 695 (7th Cir. 2009) (citing additional like cases).

In short, any risk of unfair prejudice from Tanguay's possession of the stories, photographs, and bookmarks did not affect the "significant tipping of the scales against the evidentiary worth of the proffered evidence" to justify its exclusion under Rule 403. Aquilar-Aranceta, 58 F.3d at 800. Moreover, at Tanguay's request, the court also gave the jury--in writing, with the other instructions given at the close of the case--a limiting instruction that they could not use the evidence of "stories with sexual themes, bookmarks to websites, and

18

photographs in a folder labeled 'Jared' . . . against the defendant because you disapprove of such items, or as a basis to conclude that the defendant is the kind of person who is more likely to unlawfully possess child pornography."  The Court of Appeals has recognized that such an instruction serves "to guard against any improper use of" evidence admitted under Rule 404(b). United States v. Williams, 717 F.3d 35, 43 (1st Cir. 2013).  The limiting instruction, then, served to limit any risk of prejudice that the evidence created.

Based on the foregoing reasons, and the additional ones stated on the record at trial, Tanguay's motions in limine were DENIED (except to the extent they sought to exclude the witness's prom pictures, see note 1, supra).

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  November 7, 2013

cc:  Seth R. Aframe, AUSA
     Nick Abramson, AUSA
     Behzad Mirhashem, Esq.
     Jeffrey S. Levin, Esq.