# United States Court of Appeals
## For the First Circuit

No. 16-1222

UNITED STATES OF AMERICA,

Appellee,

v.

DELFIN ROBLES-ALVAREZ, a/k/a El Indio, a/k/a Delfo,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Perez-Gimenez, U.S. District Judge]

Before

Howard, Chief Judge,
Lipez and Thompson, Circuit Judges.

Osvaldo Carlo-Linares, with whom Carlo Law Office, LLC was on brief, for appellant.
Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Julia M. Meconiates, Assistant United States Attorney, were on brief, for appellee.

October 18, 2017

**HOWARD**, **Chief Judge**.  Defendant-Appellant Delfin Robles-Alvarez appeals his convictions and sentence stemming from his participation in a large-scale cocaine trafficking conspiracy.  We reject the appellant's two claims of trial error, and therefore affirm his convictions.  However, because the district court did not address the appellant's potentially persuasive argument in favor of a sentence varying from the advisory guideline range, we vacate his sentence.

## I.

According to the evidence presented at trial, the appellant became involved in drug trafficking through his cousin Orlando Robles-Ortiz.  Robles-Ortiz himself began trafficking drugs at the invitation of his co-worker Ivan Ortega.  Robles-Ortiz and Ortega imported cocaine into Puerto Rico from Santo Domingo, St. Thomas, St. Martin, Tortola, and Antigua.  When Ortega passed away in 2005, Robles-Ortiz's role escalated.  He contacted Eduardo Pérez-Figueroa, another associate of Ortega's, and proposed an operation to smuggle 105 kilograms of cocaine into Puerto Rico from Antigua.

The night before his scheduled departure, Robles-Ortiz met with the appellant, explained the details of the upcoming trip, and offered him the chance to participate.  The appellant accepted.  The two traveled to Antigua by boat, purchased 105 kilograms of cocaine, and transported it back to Puerto Rico.  During their

return trip, Robles-Ortiz and the appellant stopped in St. Martin to meet with Enrique Rodríguez, Ortega's former supplier. Robles-Ortiz offered Rodríguez his services, and the two agreed to speak again once Robles-Ortiz arrived in Puerto Rico.

Within days of his return from Antigua, Robles-Ortiz began making smuggling trips to St. Martin, working with both Pérez and Rodríguez. Robles-Ortiz completed approximately twenty of these voyages prior to his 2012 arrest, and the appellant joined him on more than ten. On average, the group imported about 100 kilograms of cocaine on each trip. The members of the conspiracy also engaged in a variety of schemes to launder the proceeds of these smuggling operations.

Ultimately, the appellant was arrested and charged with conspiracy to distribute narcotics, see 21 U.S.C. §§ 959(a), 960(a)(3) & (b)(1)(B), 963; conspiracy to import controlled substances, see 21 U.S.C. §§ 952(a), 960(a)(1) & (b)(1)(B), 963; and conspiracy to launder monetary instruments, see 18 U.S.C. § 1956(h). The indictment specifically alleged a conspiracy to import cocaine from St. Martin. It did not mention the Antigua smuggling incident. After a four-day trial, the jury convicted the appellant on all counts. The appellant moved for judgment of acquittal pursuant to Fed. R. Crim. P. 29, arguing that the government had presented insufficient evidence to support the charges, but the district court denied that motion.

The Presentence Investigation Report prepared by the probation officer indicated that the appellant's guideline sentencing range was life imprisonment. The appellant agreed that this calculation was procedurally correct, but he also argued for a downward variance to avoid sentencing disparities among co-defendants. The appellant represented that his co-conspirators were all sentenced to between forty-six and 210 months' imprisonment. The court nonetheless imposed a life sentence, without so much as mentioning the disparity argument. This timely appeal followed.

## II.

The appellant presses three arguments on appeal: (1) that the trial evidence was insufficient to support his convictions; (2) that the district court erred in admitting evidence of his participation in the drug smuggling expedition to Antigua; and (3) that his life sentence was procedurally and substantively unreasonable. We address each of these contentions in turn.

### A. Sufficiency of the Evidence

We review the sufficiency of the evidence supporting the appellant's convictions de novo, viewing the evidence "in the light most favorable to the jury's verdict." United States v. Rivera-Donate, 682 F.3d 120, 133 (1st Cir. 2012) (citation omitted). In conducting this inquiry, we do not "assess the credibility" of

witnesses because "that is a role reserved for the jury."  Id. at 134-35 (citation omitted).

The appellant's sufficiency argument is a narrow one. He does not contend that the government's evidence, if believed, lacked probative value in support of the charges.  Rather, the appellant argues that Robles-Ortiz's testimony was "the only evidence" that the two cousins took the drug smuggling voyages together.  Even accepting the appellant's dubious characterization of the government's proof, this argument overlooks our express holding that "the uncorroborated testimony of a cooperating accomplice may sustain a conviction so long as that testimony is not facially incredible."  United States v. Torres-Galindo, 206 F.3d 136, 140 (1st Cir. 2000).  As we perceive no facial incredibility in Robles-Ortiz's testimony, this evidence alone would have been sufficient to support the jury's verdict.

Moreover, contrary to the appellant's claim, the government did provide the jury with significant corroboration of Robles-Ortiz's narrative.  Perhaps most notably, it introduced into evidence the appellant's passport bearing several stamps in and out of St. Martin during the relevant timeframe.  Additional corroboration included audiotapes of phone calls between the appellant and other conspirators, evidence of the appellant's extravagant purchases, and the testimony of another co-conspirator that the appellant was involved in the smuggling scheme.

**B.   Rule 404(b)**

The appellant next takes issue with the admission of evidence relating to his participation in the drug smuggling trip to Antigua.  Prior to trial, the government filed notice of its intent to introduce this evidence as "inextricably intertwined with" and "intrinsic to" the charged conspiracy or, alternatively, pursuant to Fed. R. Evid. 404(b).  The district court allowed the evidence to be admitted, commenting that it was "neither intrinsic nor 404(b)," but instead represented "the start of the [charged] conspiracy."  We review this ruling for abuse of discretion.  See United States v. Aguilar-Aranceta, 58 F.3d 796, 798 (1st Cir. 1995).

Rule 404(b) prohibits the use of prior bad acts evidence "to prove a person's character in order to show" action in conformity therewith.  Fed. R. Evid. 404(b).  We have previously held that evidence "concern[ing] matters intrinsic to the crime charged" does not "trigger" this provision.  United States v. Mare, 668 F.3d 35, 39 (1st Cir. 2012).  Such "intrinsic" evidence includes "the necessary description of the events leading up to" the charged crime.  United States v. Souza, 749 F.3d 74, 84 & n.2 (1st Cir. 2014); see also United States v. Green, 617 F.3d 233, 247 (3d Cir. 2010) (explaining that evidence is admissible for purpose of "allowing the jury to understand the circumstances surrounding the charged crime" or "completing the story").

Here, the district court did not abuse its discretion in admitting evidence of the Antigua smuggling trip because such evidence was intrinsic to the charged conspiracy. Clearly, the meeting between the appellant, Robles-Ortiz, and Rodríguez in St. Martin, during which the group discussed "the possibility of becoming partners in a drug smuggling operation," was "part of the necessary description of the events leading up to" the crime. Souza, 749 F.3d at 84. Absent this evidence, the jury could have been left wondering about how the various co-conspirators came together. And, in turn, evidence of the appellant's and Robles-Ortiz's participation in a drug smuggling trip to Antigua not only explained why they were passing through St. Martin, but also why Rodríguez would have trusted the pair and decided to go into business with them. Cf. United States v. Green, 698 F.3d 48, 55 (1st Cir. 2012) ("[I]n a conspiracy case, evidence of other bad acts . . . can be admitted to explain the background, formation, and development of the illegal relationship, and, more specifically, to help the jury understand the basis for the co-conspirators' relationship of mutual trust." (citation omitted)).

Even assuming, contrary to the above analysis, that Rule 404(b) applies, the district court still did not abuse its discretion in admitting evidence of the appellant's participation in the Antigua trip. Rule 404(b) expressly states that, while evidence of "other act[s] is not admissible to prove" criminal

propensity, such evidence may be introduced "for another purpose" provided that reasonable notice is given. Fed. R. Evid. 404(b). Our circuit applies a two-part test to determine the admissibility of evidence under Rule 404(b). "First, the trial judge must determine whether the evidence in question is offered for any purpose other than solely to prove that the defendant had a propensity to commit the crime in question." Aguilar-Aranceta, 58 F.3d at 798. If this "special relevance" is established, the court must then apply Rule 403 "to determine whether the probative value of the evidence is 'substantially outweighed by the danger of unfair prejudice.'" Id. (quoting Fed. R. Evid. 403).

Here, the appellant appears to concede that evidence of his participation in the Antigua trip held special relevance. Indeed, the Antigua evidence was clearly relevant to prove his intent to join the drug trafficking conspiracy. Without it, defense counsel may have argued that the appellant's mere presence with Robles-Ortiz on the voyages was not sufficient to support a conviction. See id. at 799 ("[W]e have held that it is within the judge's discretion to permit the government to introduce evidence of prior similar offenses to demonstrate the unlikeliness that the defendant was merely an innocent and unknowing bystander.").

Turning to the second prong of the Aguilar-Aranceta test, the district court did not abuse its discretion in finding that the probative value of the Antigua evidence was not

substantially outweighed by the danger of unfair prejudice. Indeed, the government presented evidence of the appellant's participation in at least ten additional smuggling trips of similar magnitude. In this context, the evidence of the Antigua trip was hardly inflammatory.

## C. Sentencing

Lastly, we consider the appellant's challenge to his life sentence. In doing so, we follow a familiar "bifurcated" review process, assessing, in turn, the procedural and substantive reasonableness of the sentence. United States v. Ayala-Vazquez, 751 F.3d 1, 29 (1st Cir. 2014) (citation omitted). Here, our inquiry ends at the first stage. In the unique circumstances of this case, the district court's failure to address, or even acknowledge, the appellant's potentially persuasive argument for a downward variance renders the sentence procedurally unreasonable.[1]

The appellant's district court sentencing memorandum focused on 18 U.S.C. § 3553(a)(6)'s directive that sentencing judges consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been

---

[1] Because we vacate the appellant's sentence on this basis, we need not rule on his separate procedural argument that the district court failed to recognize the advisory nature of the sentencing guidelines. The same is true of his contention that the court failed to accord sufficient weight to various purportedly mitigating factors.

found guilty of similar conduct." While this instruction "is primarily aimed at national disparities," it also permits consideration of disparities among co-defendants. United States v. Reyes-Santiago, 804 F.3d 453, 467 (1st Cir. 2015) (citation omitted). In the present case, the appellant requested a downward variance from the guideline sentence of life imprisonment, citing the fact that his six co-conspirators received incarcerative sentences ranging from forty-six to 210 months. Moreover, Robles-Ortiz, who represented the bottom of that range, was "the leader of the organization" and recruited the appellant to participate. At the subsequent sentencing hearing, defense counsel renewed this disparity argument and expressly referenced the memorandum. The court ultimately sentenced the appellant to life imprisonment without so much as mentioning the disparity issue.

A sentencing court commits procedural error, and thus abuses its discretion, by, among other things, "failing to adequately explain the chosen sentence." Gall v. United States, 552 U.S. 38, 51 (2007); see also 18 U.S.C. § 3553(c) (requiring that the sentencing judge "state in open court the reasons for its imposition of the particular sentence"). The precise nature of this explanation requirement depends heavily on context. See Rita v. United States, 551 U.S. 338, 356 (2007) ("The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances."). The district court must,

- 10 -

however, "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." Id. This requirement is not onerous in the "typical case" where application of the guidelines is straightforward. Id. at 357. In those circumstances, "a court's reasoning can often be inferred by comparing what was argued by the parties or contained in the pre-sentence report with what the judge did." United States v. Jiménez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc), abrogated on other grounds by Rita, 551 U.S. at 346. By contrast, where the defendant "presents nonfrivolous reasons for imposing a different sentence, . . . the judge will normally go further and explain why he has rejected those arguments." Rita, 551 U.S. at 357.

Several other circuits have held, consistent with the Supreme Court's guidance, that a sentencing judge may commit procedural error warranting remand by failing to explain its rejection of an argument for a downward variance. See United States v. Pietkiewicz, 712 F.3d 1057, 1062 (7th Cir. 2013) (finding procedural error where the district court denied a variance request "without explanation"); United States v. Smith, 541 F. App'x 306, 308 (4th Cir. 2013) (vacating sentence where "the court failed . . . to provide sufficient explanation for its decision to reject [the defendant's] request for a variance"); United States v.

Wallace, 597 F.3d 794, 804 (6th Cir. 2010) (holding sentence procedurally unreasonable where the district court "did not make even a cursory mention of the disparity" cited by the defendant). Moreover, our court has previously, albeit in a split decision, vacated a sentence where the district judge failed to respond to the defendant's argument for a downward variance to avoid disparity among co-defendants. See United States v. Cirilo-Muñoz, 504 F.3d 106, 107 (1st Cir. 2007).

Here, the appellant presented a potentially forceful disparity argument. He was sentenced to life imprisonment, while Robles-Ortiz, who was the leader of the conspiracy, recruited the appellant to join, and participated in significantly more smuggling runs, received only forty-six months. Moreover, despite the appellant's repeated attempts to bring this disparity to the court's attention, the sentencing judge did not even provide a cursory explanation for its rejection of his argument. In these unique circumstances, the court's failure to even mention the disparity issue renders the appellant's sentence procedurally unreasonable.[2]

---

[2] In arguing for affirmance, the government cites language from our opinion in Ayala-Vazquez suggesting that, where the sentencing court states that it has considered the 18 U.S.C. § 3553(a) factors, we may "presume" that it applied § 3553(a)(6)'s directive to avoid unwarranted disparities. 751 F.3d at 31. The government's reliance on this precedent is misplaced for two reasons. First, the purported disparity at issue in Ayala-Vazquez was less significant than the one cited here. The defendant in

- 12 -

Because we conclude that the district court committed procedural error, we need not assess the substantive reasonableness of the appellant's sentence. See United States v. Prange, 771 F.3d 17, 37 n.8 (1st Cir. 2014). We do, however, note that, as a general matter, "a defendant is not entitled to a lighter sentence merely because his co-defendants received lighter sentences." Reyes-Santiago, 804 F.3d at 467 (citation omitted). And here, the appellant concedes two "material differences" between his circumstances and those of his co-defendants: he did not (1) plead guilty, see United States v. Rodríguez-Lozada, 558 F.3d 29, 45 (1st Cir. 2009); or (2) cooperate with the government, see United States v. Rossignol, 780 F.3d 475, 478 (1st Cir. 2015). Where such material differences exist, we typically leave "[d]eterminations as to the relative culpability amongst codefendants" to the district judge. Ayala-Vazquez, 751 F.3d at 33; see also Cirilo-Muñoz, 504 F.3d at 107 (rejecting argument

_____

that case was sentenced to life imprisonment, but his co-defendants were sentenced to 108, 132, 156, and 180 months, respectively. See id. at 28-29. Here, by contrast, Robles-Ortiz, whose level of participation in the drug trafficking conspiracy by all accounts exceeded that of his cousin, received an incarcerative sentence of only forty-six months. As explained above, the extent of the required explanation is largely context-specific, so the greater disparity in the present case called for a more detailed explication of the court's rationale. Second, despite language indicating that consideration of a purported sentencing disparity could be presumed, our opinion in Ayala-Vazquez also made clear that the district court had, in fact, expressly discussed and rejected the defendant's contentions on this point. See id. at 31.

that the mere "fact of the sentence disparity . . . itself establishe[d] that the sentence [wa]s unreasonable"). Accordingly, we express no opinion as to the appropriate sentence on remand, instead leaving that determination to the sound discretion of the district court.

## III.

For the foregoing reasons, we **AFFIRM** the appellant's convictions, but **VACATE** his sentence and remand for further proceedings consistent with this opinion.